## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

KING KNOWLEDGE BORN ALLAH,
    *Plaintiff*,

v.

No. 3:18-cv-00887 (JAM)

SCOTT SEMPLE, *et al.*,
    *Defendants*.

### INITIAL REVIEW ORDER PURSUANT TO 28 U.S.C. § 1915A

Plaintiff King Knowledge Born Allah a/k/a Philipe Colon is a prisoner in the custody of the Connecticut Department of Correction. He has filed a complaint *pro se* and *in forma pauperis* under 42 U.S.C. § 1983 against Commissioner Scott Semple, Deputy Commissioner Monica Rinaldi, District Administrator Angel Quiros, Warden Carol Chapdelaine, Director of Security Christine Whidden, District Administrator Peter Murphy, Security Risk Group Coordinator John Aldi, Correction Officer Kelly, Correction Officer Cossette, Correction Officer Pacelli, and Lieutenant Bare. After an initial review, I conclude that plaintiff's due process and retaliation claims may proceed as to some defendants, but the remaining claims and defendants will be dismissed.

### BACKGROUND

The following facts are alleged in the complaint and are accepted as true only for purposes of this initial ruling. Plaintiff is a devout member of the Nation of Gods and Earths ("NOGE") religion, commonly referred to as the Five Percenters. In a previous lawsuit brought by plaintiff, *Colon v. Dzurenda*, No. 3:14-cv-461, the Department of Correction ("DOC") agreed to recognize the NOGE as a religious group and remove it from its list of Disruptive Groups. Doc. #1-1 at 26–43 (settlement agreement).

On September 20, 2015, while confined at Cheshire Correctional Institution, plaintiff was involved in a physical fight with other inmates. He was subsequently placed in a restrictive housing unit on administrative segregation status and issued a disciplinary report for fighting. Two days later, plaintiff pled guilty to the disciplinary charge and received sanctions. Docs. #1 at 7– 9 (¶¶ 20–27); #1-2 at 1–4.

On September 25, 2015, plaintiff received a separate disciplinary report for Security Risk Group ("SRG") affiliation and was placed in restrictive housing on administrative segregation status pending the outcome of the disciplinary proceeding. The report alleged that the fight on September 20 was a gang-related dispute between the Crips and the Latin Kings. The report stated that plaintiff participated in behaviors that were "clearly and uniquely associated" with the Latin Kings. Docs. #1 at 9 (¶ 28); #1-4 at 1.

On September 26, 2015, plaintiff wrote a statement arguing that he was a NOGE member, that he was not affiliated with either prison gang, and that the fight on September 20 was not gang related. Plaintiff also requested to interview several DOC officials in order to prepare his defense to the disciplinary charge. Although plaintiff acknowledged that he was affiliated with the Latin Kings a decade ago, he contended that the reporting officer had no evidence that he was an active Latin Kings member or that the fight on September 20 was gang-related. Docs. #1 at 10–15 (¶¶ 30–31); #1-5 at 1–8.

On September 30, 2015, Correction Officer Kelly interviewed plaintiff as part of the disciplinary investigation. During the interview, plaintiff gave Kelly his written statement and requested interviews with several DOC officials who could testify as witnesses in his defense. When asked why plaintiff was being charged with SRG affiliation, Kelly stated that he had nothing to do with the charge and that it was coming from Director Whidden and SRG Coordinator Aldi. Both Aldi and Whidden were defendants in plaintiff's previous lawsuit, *Colon*

*v. Dzurenda*, No. 3:14-cv-461. At the conclusion of the interview, Kelly checked off a box on his form indicating that plaintiff had not requested witnesses, even though the report also notes that plaintiff had clearly stated his intention to present witnesses in his defense. Later that day, plaintiff met with Correction Officer Pacelli, who was assigned as plaintiff's advocate for the disciplinary charge. Plaintiff gave Pacelli his written statement. Docs. #1 at 15–16 (¶¶ 32–36); #1-6 at 1 (Kelly interview); #1-7 at 1 (Pacelli interview).

Plaintiff's disciplinary hearing for the SRG affiliation report took place on October 8, 2015. Contrary to plaintiff's request, Pacelli did not take statements from any of his potential witnesses or advocate on his behalf. Lieutenant Bare and Correction Officer Cossette, who were also present at the hearing, did not interview or take statements from any of plaintiff's requested witnesses. The officials only permitted plaintiff to read his own written statement in defense of the charge. Plaintiff was subsequently found guilty of the disciplinary charge and classified as a Latin King. As punishment, he received twenty days of punitive segregation, sixty days loss of commissary, ten days loss of good time credit, and was assigned to a level-5 security SRG unit for two years. Docs. #1 at 17–18 (¶¶ 37–39); #1-8 at 1–2.

Plaintiff appealed the decision and claimed that he was denied due process at his disciplinary hearing because the officers refused to let him present witness testimony. He reiterated that he was a member of the NOGE and was not in any way affiliated with the Latin Kings. Docs. #1 at 18–20 (¶ 40); #1-9 at 1–9.

On October 24, 2015, plaintiff was transferred out of Cheshire and placed in the level-5 SRG unit at MacDougall-Walker Correctional Institution ("MWCI"). At MWCI, plaintiff filed a series of requests to his unit manager Captain Rivera regarding conditions of confinement. The requests complained about the unit's continuous use of handcuff restraints, which was causing

shoulder pain, and about the small size of the recreation cages in the unit. Plaintiff also wrote a request to the medical unit complaining about his shoulder pain. Doc. #1 at 20 (¶¶ 41–43).

On November 9, 2015, plaintiff sent a lengthy letter to Commissioner Semple detailing his prior lawsuit, his NOGE membership, and the SRG disciplinary charge. Plaintiff argued that officials had wrongfully accused him of being a Latin Kings member, that the fight on September 20 was not gang related, and that he believed the disciplinary charge was retaliation for his previous lawsuit. Doc. #1 at 21–28 (¶¶ 44, 46).

On November 11, 2015, plaintiff filed a level 2 grievance appealing the SRG designation. In the grievance he alleged that he had never received a response to his original appeal. Docs. #1 at 28–29 (¶ 47); #1-14 at 1–3 (level 2 grievance).

On November 20, 2015, plaintiff received a letter from District Administrator Murphy denying his original appeal of the SRG designation. Murphy's letter stated that the SRG designation was based on information and documentation that supported the guilty finding and that there was no "significant due process failure." Docs. #1 at 29–30 (¶ 48); #1-9 at 11 (Murphy letter).

On November 23, 2015, plaintiff filed several grievances regarding the conditions of his confinement, including the hand restraint policy and the small recreation cages. Plaintiff also submitted a request to Captain Rivera asking to be placed on "recreation alone status" because he was not affiliated with the Latin King inmates in his unit. Weeks later, plaintiff received a written denial of his grievance regarding the handcuff restraint policy. The denial stated that the policy was in place "for the safety and security of inmates and staff." Doc. #1 at 30–31, 33–34 (¶¶ 49–50, 53).

On November 30, 2015, plaintiff sent a letter to an attorney in the Inmate Legal Aid Program ("ILAP") detailing his complaints about the disciplinary hearing and SRG affiliation.

But when he spoke to the attorney a month later, the attorney notified him that she had not

received any mail from him. Plaintiff wrote to several officials at MWCI regarding the missing

legal mail. An investigation determined that the mail was logged as having been sent on

December 22, although the ILAP attorney never received the material. Doc. #1 at 31 (¶ 51); 34–

37 (¶ 54–61).

On December 9, 2015, plaintiff wrote a letter to Deputy Warden Chapdelaine addressing

conditions of confinement and protesting his designated Latin Kings affiliation. Doc. #1 at 31–33

(¶ 52)

On December 30, 2015, plaintiff received a written letter from Deputy Commissioner

Rinaldi responding to his letter to Semple. The letter reaffirmed the finding of the SRG

designation. Doc. #1 at 33–34 (¶ 53).

On January 10, 2016, plaintiff filed a Level 1 grievance against Captain Rivera for

placing him in a cell with an active gang member, again protesting his SRG designation and

requesting "recreation alone status." Days later, he received a response denying the grievance,

which in part stated that plaintiff had been placed on "recreation alone status," thereby rendering

the issue moot. *Id.* at 37–38 (¶ 62–63).

On January 25, 2016, plaintiff received a letter from Warden Chapdelaine placing him on

grievance restriction status for six months. Chapdelaine reasoned that plaintiff had filed seven

grievances at MWCI from November 30, 2015, to January 25, 2016, and, pursuant to DOC

Administrative Directive 9.6, inmates may only file one grievance per month for six months.

Plaintiff appealed this decision to District Administrator Quiros, claiming that the

grievance restriction denied him his constitutional right to access the courts. On March 30, 2016,

he received a response to his appeal reversing the grievance restriction on the grounds that

Warden Chapdelaine had misinterpreted the administrative directive. Plaintiff remains housed in

the level-5 SRG unit at MWCI with other gang members. He shares a cell with the leader of the

Crips gang. *Id.* at 38–42 (¶¶ 64–67).

**DISCUSSION**

Pursuant to 28 U.S.C. § 1915A, the Court must review a prisoner's civil complaint

against a governmental entity or governmental actors and "identify cognizable claims or dismiss

the complaint, or any portion of the complaint, if the complaint—(1) is frivolous, malicious, or

fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a

defendant who is immune from such relief." If the prisoner is proceeding *pro se*, the allegations

of the complaint must be read liberally to raise the strongest arguments that they suggest. *See*

*Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010).

In recent years, the Supreme Court has set forth a threshold "plausibility" pleading

standard for courts to evaluate the adequacy of allegations in federal court complaints. A

complaint must allege enough facts—as distinct from legal conclusions—that give rise to

plausible grounds for relief. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 570 (2007). Notwithstanding the rule of liberal interpretation of a *pro*

*se* complaint, a *pro se* complaint may not survive dismissal if its factual allegations do not meet

the basic plausibility standard. *See, e.g.*, *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d

Cir. 2015).

Plaintiff has brought his claims against several of the defendants in both their individual

and official capacities. To the extent that plaintiff intends to bring official-capacity claims

against any of the defendants for money damages, such claims are plainly barred by the Eleventh

Amendment because each of the defendants is an employee of the State of Connecticut. *See, e.g.*,

*Kentucky v. Graham*, 473 U.S. 159, 169 (1985). Because plaintiff has not requested injunctive

6

relief, all that remains for me to consider are plaintiff's claims against defendants in their individual capacities for monetary damages.

### *Due Process*

Plaintiff alleges that his disciplinary hearing violated his right to due process under the Fourteenth Amendment because defendants "falsif[ied] documents" and deprived him of the opportunity to call witnesses. Doc. #1 at 42–43 (¶ 68). The standard analysis for a claim of a violation of procedural due process "proceeds in two steps: We first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (*per curiam*).

In the prison context, which involves someone whose liberty interests have already been severely restricted because of his or her confinement in a prison, a prisoner plaintiff must show that he was subject to an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). In *Sandin*, the Supreme Court concluded that a prisoner who was subject to a disciplinary term of 30 days confinement in restrictive housing did not sustain a deprivation of a liberty interest that was subject to protection under the Due Process Clause. *Id.* at 486. Following *Sandin*, the Second Circuit has explained that courts must examine the actual punishment received, as well as the conditions and duration of the punishment. *See Davis v. Barrett*, 576 F.3d 129, 133–34 (2d Cir. 2009); *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004).

Plaintiff has adequately pled that as a result of the disciplinary hearing, he was designated as a SRG member and was transferred to a SRG segregation unit at MWCI. At the time that this complaint was filed, plaintiff was confined in the SRG unit for nearly one-and-a-half years. I conclude that this length of confinement is sufficient to implicate constitutionally protected

liberty interests. *See, e.g.*, *Colon v. Howard*, 215 F.3d 227, 231 (2d Cir. 2000) ("Confinement in normal SHU conditions for 305 days is in our judgment a sufficient departure from the ordinary incidents of prison life to require procedural due process protections under *Sandin*.").

Having alleged a deprivation of a liberty interest, plaintiff must further allege that he did not receive the process that was constitutionally due. The procedural protections that are due to a prison inmate facing a disciplinary hearing are not so expansive as the due process protections for a criminal defendant standing trial. *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1973); *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004). Thus, for example, a prison inmate does not have the right to counsel or to confront witnesses against him. *See Sira*, 380 F.3d at 69 (citing *Wolff*, 418 U.S. at 567–70). On the other hand, an inmate must be given "advance written notice of the charges against him; a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence; a fair and impartial hearing officer; and a written statement of the disposition, including the evidence relied upon and the reasons for the disciplinary actions taken." *Sira*, 380 F.3d at 69 (citing *Wolff*, 418 U.S. at 563–67). Moreover, there must be at least some evidence to support the findings made in the disciplinary hearing. *See Washington v. Gonyea*, 538 F. App'x 23, 25 (2d Cir. 2013).

Plaintiff alleges that his due process rights were violated because he was not permitted to call witnesses. A prisoner has the right to call witnesses "when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Wolff*, 418 U.S. at 566. Prison officials may disallow witnesses at disciplinary hearings without violating due process if the denial is "logically related to preventing undue hazards to institutional safety or correctional goals." *Ponte v. Real*, 471 U.S. 491, 497 (1985) (internal quotations omitted). Moreover, prison officials may deny witnesses for irrelevance, lack of necessity, or where a witness refuses to testify. *See Jamison v. Fischer*, 617 F. App'x 25, 27 (2d Cir. 2015).

In this case, plaintiff requested to call certain witnesses several times. Indeed, defendant Kelly noted on his interview form that plaintiff had requested witnesses, but then also checked off a box on the same form indicating that plaintiff had *not* requested witnesses. Doc. #1-6 at 1. According to plaintiff's complaint, prison officials did not deny the witnesses for any reason logically related to correctional goals or for irrelevance or lack of necessity. Accordingly, I conclude at this initial stage that plaintiff has plausibly alleged that his due process rights were violated when certain of the defendants refused to allow witnesses to testify on plaintiff's behalf at the hearing. Plaintiff's due process claim may proceed against the following defendants who were allegedly involved in denying the witnesses: Correction Officer Kelly, Correction Officer Cossette, Correction Officer Pacelli, and Lieutenant Bare.

### *First Amendment Retaliation*

Plaintiff alleges that the disciplinary SRG charge was fabricated in retaliation for a previous lawsuit that he filed against DOC officials. To state a claim for First Amendment retaliation, a plaintiff must allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected [conduct] and the adverse action." *Holland v. Goord*, 758 F.3d 215, 225 (2d Cir. 2014). "Only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation." *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003). Further, courts must treat prisoner retaliation claims "with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." *Id.* at 352 (internal quotations and citation omitted); *Dorsey v. Fisher*, 468 F. App'x 25, 27 (2d Cir. 2012). Plaintiff alleges that he was

retaliated against for filing a civil rights lawsuit, which is clearly constitutionally protected

conduct. *Davis*, 320 F.3d at 352–53.

Although plaintiff's complaint does not explicitly state a claim for First Amendment

retaliation, I conclude that plaintiff has stated a retaliation claim against defendants Whidden and

Murphy. Plaintiff contends that he was told that the SRG charge was "coming from" Whidden

and Aldi. Doc. #1 at 16 (¶ 33). He further alleges that this was in retaliation for his previous

lawsuit, *Colon v. Dzurenda*, No. 3:14-cv-461, in which Whidden and Aldi were also defendants.

Plaintiff alleges that these defendants fabricated the disciplinary report or directed others to

fabricate the report, which led to him being placed in restrictive housing and suffering other

punitive measures. The result of the disciplinary hearing also caused him to be transferred from

one prison to another, where he was placed in a unit with harsher conditions. These

consequences constitute adverse actions, because they could plausibly "deter a similarly situated

individual of ordinary firmness from exercising his or her constitutional rights." *Davis*, 320 F.3d

at 353. Accordingly, I will allow plaintiff's retaliation claim to proceed against Whidden and

Aldi.

### *Supervisory Liability*

Plaintiff's claims against Commissioner Semple, Deputy Commissioner Monica Rinaldi,

Warden Carol Chapdelaine, District Administrator Angel Quiros, and District Administrator

Peter Murphy rest on their denials of plaintiff's various administrative appeals and responses to

his letters detailing his complaints. But plaintiff has failed to allege sufficient facts to show that

they were party to or personally involved in any of the underlying deprivation of his

constitutional rights for which plaintiff sought redress through the grievance and appeal

process. As the Second Circuit has made clear, "liability for supervisory government officials

cannot be premised on a theory of *respondeat superior* because § 1983 requires individual,

personalized liability on the part of each government defendant." *Raspardo v. Carlone*, 770 F.3d 97, 116 (2d Cir. 2014).

The Second Circuit has suggested that it is "questionable whether an adjudicator's rejection of an administrative grievance would make him liable for the conduct complained of." *McKenna v. Wright*, 386 F.3d 432, 437 (2d Cir. 2004); *see also Delee v. Hannigan*, 729 F. App'x 25, 32 (2d Cir. 2018) (superintendent prison official's "frequent or routine approval of disciplinary action and his decision not to act on a letter received from an inmate are insufficient to establish personal involvement by a supervisor").[1]

It is true that some district court decisions appear divided about whether and when a supervisory official's denial of a grievance may constitute sufficient involvement for a supervisory official to be liable for a violation of an inmate's constitutional rights. *See Ackridge v. Aramark Corr. Food Servs.*, 2018 WL 1626175, at *15–16 (S.D.N.Y. 2018); *Young v. Choinski*, 15 F. Supp. 3d 172, 191–92 (D. Conn. 2014). But because at best the law is not clearly established that a supervisory official violates the Constitution by erroneously denying a grievance appeal, I conclude that the supervisory defendants here are entitled to qualified immunity. *See Poe v. Leonard*, 282 F.3d 123, 134 (2d Cir. 2002) (qualified immunity requires showing that official violated clearly established law and noting that, in the supervisory liability context, a court's focus must be on whether the law was clearly established both as to the

---

[1] In *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995), the Second Circuit listed five ways in which a supervisory defendant may be deemed personally involved in a constitutional violation to include, among others, if "the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong," or if "the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring." *Id.* at 873. The *Colon* decision, however, pre-dates the above-quoted statement from the Second Circuit's *McKenna* decision in 2004, which states that it is "questionable whether an adjudicator's rejection of an administrative grievance would make him liable for the conduct complained of." 386 F.3d at 437. More recently still, the Second Circuit has expressly reserved deciding whether the above-quoted aspects of *Colon* are still good law in light of the Supreme Court's intervening decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), which "may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations." *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013).

underlying constitutional violation as well as supervisory liability doctrine by which the supervisor would be held liable). Accordingly, I will dismiss the due process and retaliation claims as to supervisory defendants Semple, Rinaldi, Quiros, Chapdelaine, and Murphy.

### *Free Exercise and RLUIPA claims*

Plaintiff also brings claims for violations of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc (Count Two) and of the First Amendment right to free exercise of religion (Count Four). He alleges conclusorily that the defendants have "literally blocked/are blocking every attempt by the plaintiff to practice his culture (religion)." Doc. #1 at 43 (¶ 70). But other than stating that he is a member of NOGE, plaintiff does not allege any facts to support his claim that defendants did anything to interfere with his ability to practice his religion. The fact that plaintiff previously brought and settled a lawsuit regarding religious freedom has no bearing on whether any of the violations alleged in the complaint constitute interference with plaintiff's religion. Moreover, a plaintiff may only request injunctive relief under RLUIPA and may not obtain money damages. *Holland*, 758 F.3d at 224. Because plaintiff has only requested money damages, his RLUIPA claim must be dismissed. Accordingly, I conclude that plaintiff has failed to state a claim under the First Amendment or RLUIPA.

### *Equal Protection Claim*

Plaintiff also brings an Equal Protection Clause claim alleging that he has been discriminated against because he is a black man and because he is an adherent of NOGE. The Equal Protection Clause of the Fourteenth Amendment protects prisoners from invidious discrimination. This provision does not mandate identical treatment for each individual; rather, it requires that similarly situated persons be treated the same. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439–40 (1985). Thus, plaintiff must allege facts showing that he was treated differently from similarly situated inmates and that the different treatment was based on

12

"impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000).

Here, however, plaintiff does not allege any facts to raise a plausible inference that other similarly situated inmates were treated differently. Nor has plaintiff alleged any facts that raise a plausible inference that any of the alleged violations described in the complaint are related to his race or religion. Accordingly, I will dismiss plaintiff's Equal Protection claim.

### *Remaining claims*

Finally, plaintiff brings claims for violations of his First Amendment right to petition the government for redress of grievances and of his Eighth Amendment right against cruel and unusual punishment. These claims, although sequential, are factually and legally distinct from the due process and retaliation claims described above. Both of these claims are predicated on incidents that occurred after plaintiff was transferred from Cheshire to MCWI, and, other than high-ranking DOC officials, the defendants involved in these claims appear to be distinct. I therefore conclude that these claims are not properly joined in this action, and the complaint does not comply with Rule 20 of the Federal Rules of Civil Procedure. In such circumstances, a plaintiff is required to file separate lawsuits against each defendant or against each group of defendants who acted in concert with one another or as to whom plaintiff's claims are logically connected to one another.

Accordingly, to the extent that plaintiff wishes to pursue his claims for violations of his First Amendment right to petition the government for redress of grievances or Eighth Amendment right against cruel and unusual punishment, plaintiff may file separate complaints each of which comply with Fed. R. Civ. P. 20. The amended complaint(s) should include only related claims and shall list only the defendants involved in those claims in the case caption.

13

In accordance with the foregoing analysis, the Court enters the following orders:

(1) All claims against Semple, Chapdelaine, Rinaldi, Murphy, and Quiros are

**DISMISSED**. Plaintiff's Fourteenth Amendment procedural due process claim may proceed

against Kelly, Bare, Cossette, and Pacelli in their individual capacities for damages. The First

Amendment claim for retaliation may proceed against Whidden and Aldi in their individual

capacities for damages. All other claims are **DISMISSED**.

(2) The Clerk shall verify the current work addresses for Kelly, Whidden, Aldi,

Pacelli, Bare, and Cossette with the DOC Office of Legal Affairs, mail a waiver of service of

process request packet containing the complaint to those defendants at the confirmed addresses

within **twenty-one (21) days** of this Order, and report to the Court on the status of the waiver

requests on the **thirty-fifth (35) day** after mailing. If any defendant fails to return the waiver

request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on

him/her, and he/she shall be required to pay the costs of such service in accordance with Fed. R.

Civ. P. 4(d).

(3) Defendants shall file their response to the complaint, either an answer or motion to

dismiss, within **sixty (60) days** from the date the notice of lawsuit and waiver of service of

summons forms are mailed to them. If they choose to file an answer, they shall admit or deny the

allegations and respond to the cognizable claim recited above. They may also include any and all

additional defenses permitted by the Federal Rules.

(4) Discovery, pursuant to Fed. R. Civ. P. 26–37, shall be completed by **February 2,**

   **2019.** Discovery requests need not be filed with the Court.

(5) All motions for summary judgment shall be filed by **March 4, 2019.**

(6) Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a

dispositive motion within **twenty-one (21) days** of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(7) If plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that plaintiff MUST notify the court. Failure to do so can result in the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. Plaintiff should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address. Plaintiff should also notify defendants or defense counsel of his new address.

It is so ordered.

Dated at New Haven this 6th day of August, 2018.

/s/*Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge