# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| KING KNOWLEDGE BORN ALLAH, | : | |
| *Plaintiff*, | : | |
| | : | |
| v. | : | No. 3:18-CV-887 (KAD) |
| | : | |
| SCOTT SEMPLE, et al. | : | |
| *Defendants*. | : | January 4, 2019 |

**MEMORANDUM OF DECISION RE: MOTION TO DISMISS (DE#24)**

**Preliminary Statement of the Case**

On May 25, 2018, the plaintiff, King Knowledge Born Allah, a prisoner in the custody of the Connecticut Department of Correction ("DOC"), filed a complaint *pro se* under 42 U.S.C. § 1983 against several DOC officials for violating his constitutional rights. After initial review, the court, *Meyer, J.*, permitted the plaintiff's Fourteenth Amendment due process claim to proceed against four defendants: Correction Officer Kelly, Correction Officer Cossette, Correction Officer Pacelli, and Lieutenant Bare. The court also permitted the plaintiff's First Amendment retaliation claim to proceed against two other defendants: Director of Security Christine Whidden and Security Risk Group ("SRG") Coordinator John Aldi. The court ordered service on all defendants with the exception of defendants, Kelly and Bare, who could not be identified by the DOC based upon the description contained in the plaintiff's complaint. The court therefore directed the plaintiff to provide additional identifying information for these two defendants by August 28, 2018. Having received nothing, the court again directed the plaintiff to submit additional information on defendants Bare and Kelly, which the defendant did on November 14, 2018.

On October 12, 2018, the defendants filed the instant motion to dismiss all claims against them for a variety of reasons. Defendants Kelly and Bare seek dismissal under Federal Rule of Civil Procedure 12(b)(5) for insufficient service of process insofar as the plaintiff never properly identified Kelly and Bare. Defendant Whidden seeks dismissal under Fed. R. Civ. P. 12(b)(5) because no return of service has been filed with respect to Whidden. Defendants Aldi and Whidden seek dismissal of the First Amendment retaliation claim under Federal Rule of Civil Procedure 12(b)(6) because the plaintiff has failed to sufficiently allege that Aldi and Whidden were personally involved in the events giving rise to his claim or that retaliation was a substantial or motivating factor in their alleged conduct. Finally, all defendants contend that they are entitled to qualified immunity on the plaintiff's claims. The plaintiff filed an opposition to the motion to dismiss on November 20, 2018 in which he claims that (1) he never received the court's orders directing him to submit additional identifying information for defendants Kelly and Bare, (2) he has no access to a law library or legal resources, (3) the court's Initial Review Order permitting his constitutional claims to proceed "speaks for itself," and (4) his allegations, construed liberally, are sufficient for his claims to proceed to discovery. For the following reasons, the court will GRANT in part and DENY in part the defendants' collective motion to dismiss.

**Standard of Review**

A party may move to dismiss a complaint for insufficient service of process. Fed. R. Civ. P. 12(b)(5); *Rzayeva v. U.S.*, 492 F. Supp. 2d 60, 74 (D. Conn. 2007). The motion to dismiss must be granted if the plaintiff fails to serve a copy of the complaint and summons on the defendants under Federal Rule of Civil Procedure 4. *Rzayeva*, 492

F. Supp. 2d at 74. "Once validity of service has been challenged, it becomes the plaintiff's burden to prove that service of process was adequate." *Id.* (quoting *Cole v. Aetna Life & Cas.*, 70 F. Supp. 2d 106, 110 (D. Conn. 1999)).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when . . . plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged." *Id.* The plausibility standard is not a probability requirement; the complaint must show, not merely allege, that the plaintiff is entitled to relief. *See id.*

"Although all allegations contained in the complaint are assumed to be true, this tenet is 'inapplicable to legal conclusions.'" *LaMagna v. Brown*, 474 F. App'x 788, 789 (2d Cir. 2012) (quoting *Ashcroft*, 556 U.S. at 678); *see also Amaker v. New York State Dept. of Corr. Servs.*, 435 F. App'x 52, 54 (2d Cir. 2011) (same). Accordingly, the court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (quoting *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008) (internal quotation marks omitted)). Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). This is true whether the plaintiff has counsel or appears *pro se*. *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010). However, "[w]here . . . the complaint was filed *pro se*, it must be construed liberally with 'special

solitude' and interpreted to raise the strongest claims that it suggests." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) (quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)).

**Allegations**

The court reiterates the plaintiff's allegations as contained in the Initial Review Order:

> Plaintiff is a devout member of the Nation of Gods and Earths ("NOGE") religion, commonly referred to as the Five Percenters. Compl. ¶ 21. In a previous lawsuit, the DOC agreed to recognize the NOGE as a religious group and remove it from its list of Disruptive Groups. Settlement Agreement (DE#89-1), *Colon v. Dzurenda*, No. 3:14-cv-461 (SALM).[1] On September 20, 2015, while confined at Cheshire, plaintiff became involved in a physical fight with other inmates. Compl. ¶ 24. He was taken to a restrictive housing unit, issued a disciplinary report for fighting, and was placed on administrative segregation pending the outcome of the disciplinary action. *Id.* at ¶¶ 25-26. Two days later, plaintiff pleaded guilty to the disciplinary charge and received as sanctions seven days of punitive segregation, thirty days loss of commissary, thirty days loss of recreation, and ten days loss of good time credit. *Id.* at ¶ 27.
>
> On September 25, plaintiff received a separate disciplinary report for SRG affiliation and was placed on administrative segregation status pending the outcome. Compl. ¶¶ 28-29. The report alleged that the fight in which plaintiff was involved was SRG-related because it involved known prison gangs, the Crips and the Latin Kings. *Id.* at ¶ 29. Plaintiff wrote a statement contesting the allegations in the report, arguing that (1) he was a NOGE member, (2) he was not affiliated with either prison gang, and (3) the fight on September 20 was not gang related. *Id.* at ¶ 31. Plaintiff also requested to interview a number of DOC officials in preparation of his defense to the disciplinary charge. *Id.* Although plaintiff acknowledged that he had been a Latin Kings member many years ago, he contended that the reporting officer, Correction Officer Verdura, had no evidence that he was an active Latin Kings member or that the fight on September 20 was gang related. *Id.*

---

[1] In *Colon v. Dzurenda*, No. 3:14-cv-461 (SALM), the plaintiff sued various DOC officials for violating his First Amendment right to freely exercise his religion by placing the NOGE on their list of Disruptive Groups and confiscating his religious materials. In a settlement dated February 15, 2017, the DOC officials, while denying liability, agreed to designate the NOGE as a religion, remove it from their list of Disruptive Groups, and return plaintiff's religious materials. Settlement Agreement (DE#89-1).

On September 30, Correction Officer Kelly interviewed plaintiff as part of the disciplinary report investigation. Compl. ¶ 32. During the interview, plaintiff gave Kelly his written statement and requested interviews with other DOC officials who could testify as witnesses in his defense. *Id.* at ¶ 33. When he asked Kelly why he was being charged with SRG affiliation, Kelly stated that he had nothing to do with the charge and that it was coming from Director Whidden and SRG Coordinator Aldi. *Id.* Both Aldi and Whidden were defendants in plaintiff's previous lawsuit, *Colon v. Dzurenda*, No. 3:14-cv-461. *Id.* At the conclusion of the interview, Kelly checked off a box on his form indicating that plaintiff had not requested witnesses, even though plaintiff had clearly stated his intention to present witnesses in his defense. *Id.* at ¶ 34. Later that day, plaintiff met with Correction Officer Pacelli, who was assigned as plaintiff's advocate for the disciplinary charge. Compl. ¶ 35. Plaintiff gave Pacelli his written statement. *Id.* at ¶ 36.

Plaintiff's disciplinary hearing for the SRG affiliation report took place on October 8, 2015. Compl. ¶ 37. Pacelli did not, as plaintiff requested, take statements from any of his potential witnesses or advocate on his behalf. *Id.* at ¶ 38. Lieutenant Bare and Correction Officer Cossette, who were also present at the hearing, did not interview or take statements from any of plaintiff's requested witnesses. *Id.* The officials only permitted plaintiff to read his own written statement in support of his defense. *Id.* Plaintiff was subsequently found guilty of the disciplinary charge and classified as a Latin King. *Id.* at ¶ 39. As punishment, he received twenty days of punitive segregation, sixty days loss of commissary, ten days loss of good time credit, and was assigned to a level-5 security SRG unit for two years. *Id.*

Plaintiff immediately appealed the decision, claiming that he was denied due process at his disciplinary hearing because the officers refused to let him present witness testimony. Compl. ¶ 40. He reiterated that he was a member of the NOGE and was not in any way affiliated with the Latin Kings. *Id.* After a month without a response, plaintiff filed a level-2 appeal of the decision. *Id.* at ¶ 47.

On October 24, plaintiff was transferred out of Cheshire and placed in the level-5 SRG unit at MWCI. Compl. ¶ 41. A week later, he wrote a request to his unit manager, Captain Rivera, complaining about the unit's handcuff restraint policy because the continuous placement in handcuffs was causing pain in his shoulders. *Id.* at ¶ 42; Pl.'s Ex. 11 (DE#1-11). Shortly thereafter, he submitted a second request complaining that the recreation cages in the unit were too small. Compl. ¶ 43; Pl.'s Ex. 12 (DE#1-12). Plaintiff also wrote a request to the medical unit complaining about his shoulder pain. Compl. ¶ 45.

On November 7, plaintiff wrote a lengthy letter to Commissioner Semple detailing his prior lawsuit, membership to the NOGE, and the SRG disciplinary charge. Compl. ¶ 44; Pl.'s Ex. 13 (DE#1-13). Again, plaintiff argued that officials had wrongfully accused him of being a Latin Kings member, that the fight on September 20 was not gang related, and that he believed the disciplinary charge was retaliation for his previous lawsuit. Compl. ¶ 44.

On November 9, plaintiff received a written letter from District Administrator Murphy denying his October 8 appeal from the disciplinary hearing. Pl.'s Ex. 9 (DE#1-9). Murphy's letter stated that plaintiff was found guilty "based on information and documentation[] that show[ed] [he] violate[d] [DOC] Administrative Directive 9.5 Code of Penal Discipline by participation in behaviors which are clearly and uniquely associated with a [SRG] Latin Kings." *Id.* Murphy added that the investigation into the charge revealed that plaintiff was, in fact, affiliated with the Latin Kings and that "no significant due process failure occurred in the disposition of [his] [SRG] affiliation designation . . ." *Id.*

On November 23, plaintiff filed multiple grievances regarding the conditions of his confinement in the SRG unit. Compl. ¶ 49. Specifically, he complained about the restraint policy, which requires the use of handcuffs for all out-of-cell movement and how it caused him shoulder pain. *Id.* He also complained about the small recreation cages, which plaintiff is unable to use during the winter months due to the accumulation of snow and rain. *Id.* Plaintiff submitted another request to Captain Rivera asking that he be placed on "recreation alone status" because he was not affiliated with the Latin King inmates in his unit. *Id.* at ¶ 50. He later wrote a letter to Deputy Warden Chapdelaine seeking the same remedy and protesting his designated Latin Kings affiliation. *Id.* at ¶ 52. Weeks later, plaintiff received a written denial of his grievance regarding the handcuff restraint policy, stating that the policy is in place "for the safety and security of inmates and staff." *Id.* at ¶ 53; Pl.'s Ex. 11.

On November 30, plaintiff sent a letter to an attorney in the Inmate Legal Aid Program ("ILAP") detailing his complaints about the disciplinary hearing and SRG affiliation. Compl. ¶ 51. When he spoke to the attorney a month later, the attorney notified him that she had not received any mail from him. *Id.* at ¶ 54. Plaintiff wrote to several officials at MWCI regarding the missing legal mail, who investigated the issue and determined that the mail was logged as having been sent on December 22. *Id.* at ¶¶ 57-59. However, the ILAP attorney never received the material. *Id.* at ¶ 60.

On December 30, plaintiff received a written letter from Deputy Commissioner Rinaldi responding to his letter to Semple. Compl. ¶ 61. The letter stated that plaintiff's "allegations . . . regarding retaliation and

misconduct on the part of the Internal Security Unit [were] vague and without merit." *Id.*; Pl.'s Ex. 20 (DE#1-20). Rinaldi added that a "comprehensive review of the circumstances surrounding [his] [SRG] affiliation was completed." Pl.'s Ex. 20.

On January 10, 2016, plaintiff filed another grievance against Captain Rivera for placing him in a cell with an active gang member, again protesting his SRG designation and requesting "recreation alone status." Compl. ¶ 62. Days later, he received a response denying the grievance, which in part stated that plaintiff had been placed on "recreation alone status," thereby rendering the issue moot. *Id.* at ¶ 63.

\* \* \*

To date, plaintiff is still housed in the level-5 SRG unit at MWCI with other gang members. Compl. ¶ 67. He shares a cell with the leader of the Crips gang, members of which he fought on September 20, 2015. *Id.*

Initial Review Order at 1-6.

**Discussion**

**Insufficient Service of Process**

The court first addresses the defendants' contention that the claims against Kelly, Bare, and Whidden should be dismissed under Rule 12(b)(5) for insufficient service of process. *See McRae v. Fischer*, No. 9:17-CV-00146 (BKS/CFH), 2017 WL 3535298, at \*2 (N.D.N.Y. July 14, 2017) (could must address issue of proper service before argument that plaintiff failed to state claim under 12(b)(6)). Kelly and Bare aver that they were never properly identified and served. Whidden avers that service on her was insufficient because no return of service was filed with the court.

With respect to defendants Kelly and Bare, the record clearly shows that the DOC was unable to identify any officials by those names in their employee database. Therefore, the Court directed the plaintiff to submit additional identifying information for those two defendants no later than August 28, 2018. The court subsequently directed the

plaintiff to provide the information by November 26, 2018.  Although the plaintiff claims he never received the court's orders, on November 14, 2018, after the motions to dismiss were filed, he submitted a notice to the court regarding Kelly and Bare.  Therein, he stated that Kelly is a correction officer employed at Cheshire Correctional Institution ("Cheshire") who conducts disciplinary investigations and that Bare is a disciplinary hearing officer employed at MacDougall-Walker Correctional Institution ("MWCI").  The plaintiff could not provide any other information regarding these defendants because all documents released by the DOC redacted their first names.

The court requested the DOC's assistance in identifying these two defendants using all of the information provided by the plaintiff.  The DOC has been unable to identify any officials named Kelly or Bare who worked in the facilities at which the alleged constitutional violations occurred.  The plaintiff has not provided the court with sufficient information for this court to even identify these defendants, let alone effectuate service on these defendants.  The motion to dismiss filed on behalf of individuals identified as Kelly and Bare is GRANTED.

With respect to Whidden, she did not waive service.  As a result, the clerk issued an electronic summons on October 10, 2018 and sent the same to the United States Marshal for service upon Whidden.  The instant motion to dismiss was filed two days later on October 12, 2018.  On December 3, the clerk docketed the return of service, which indicates that Whidden was served on November 1, 2018.  Therefore, defendant Whidden was properly served and the motion to dismiss on this ground is DENIED.

**First Amendment Retaliation**

Defendants Aldi and Whidden next argue that the First Amendment retaliation claim against them should be dismissed under Rule 12(b)(6) because the plaintiff has failed to sufficiently allege their personal involvement in the alleged retaliatory action or that their actions were motivated by retaliation. The plaintiff argues that the court's Initial Review Order "speaks for itself," and thus, the claim should be allowed to proceed to discovery.

"Prison officials may not retaliate against inmates for exercising their constitutional rights." *Riddick v. Arnone*, No. 3:11-CV-631 (SRU), 2012 WL 2716355, at *6 (D. Conn. Jul. 9, 2012). "To prevail on a First Amendment retaliation claim, an inmate must establish (1) that the speech or conduct at issue was protected, (2) that the [official] took adverse action against the inmate, and (3) that there was a causal connection between the protected [speech] and the adverse action." *Holland v. Goord*, 758 F.3d 215, 225 (2d Cir. 2014) (internal quotation marks omitted); *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009). In order to allege causation, the inmate must state facts "suggesting that the protected conduct was a substantial or motivating factor in the prison official's decision to take action against [him]." *Moore v. Peters*, 92 F. Supp. 3d 109, 121 (W.D.N.Y. 2015) (quoting *Burton v. Lynch*, 664 F. Supp. 2d 349, 367 (S.D.N.Y. 2009)).

"Because claims of retaliation are easily fabricated, the courts consider such claims with skepticism and require that they be supported by specific facts; conclusory statements are not sufficient." *Riddick*, 2012 WL 2716355, at *6; *see also Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001) ("virtually any adverse action taken against a

prisoner by a prison official – even those otherwise not rising to the level of a constitutional violation – can be characterized as a constitutionally proscribed retaliatory act"). "Accordingly, plaintiffs in retaliatory motive cases must plead 'specific and detailed factual allegations which amount to a persuasive case' or 'facts giving rise to a colorable suspicion of retaliation.'" *Moore*, 92 F. Supp. 3d at 120 (quoting *Johnson v. Eggersdorf*, 8 F. App'x 140, 144 (2d Cir. 2001)).

Preliminarily, the fact that the court permitted the First Amendment claim to proceed in its Initial Review Order does not preclude a motion to dismiss under Rule 12(b)(6) and a subsequent finding by the court, after entertaining such a motion, that the claim fails to satisfy the plausibility standard under *Iqbal*, 556 U.S. at 678. *See Smalls v. Wright*, No. 3:16-CV-2089 (JCH), 2017 WL 3474070, at *4 (D. Conn. Aug. 11, 2017) (court not bound by Initial Review Order that plaintiff had stated plausible claim); *Torres v. McGrath*, No. 3:15-CV-1558 (VLB), 2017 WL 3262162, at *5 n.2 (D. Conn. July 31, 2017) (same). Therefore, the plaintiff's contention that the court's Initial Review Order "speaks for itself" is without merit.

With respect to his claim, the plaintiff alleges: (1) both Aldi and Whidden were defendants in the plaintiff's previous lawsuit, *Colon v. Dzurenda*, No. 3:14-CV-461, (2) Kelly told the plaintiff that Aldi and Whidden directed the filing of the disciplinary report against him for the SRG affiliation, and (3) the disciplinary finding resulted in the plaintiff's transfer from Cheshire to MWCI where he endures stricter conditions of confinement. The plaintiff's essential allegation is that Whidden and Aldi fabricated the disciplinary report in retaliation for his previous lawsuit against them.

Whidden and Aldi argue that these allegations are insufficient to establish that they had any involvement in the issuance of the disciplinary report or the hearing and disposition that followed. They further argue that the plaintiff's allegation that the disciplinary report "c[ame] from Aldi . . . Whidden;" is conclusory, based on hearsay, and unsupported by any other evidence.[2] Alternatively, Whidden and Aldi contend that even if the allegations are sufficient regarding their personal involvement in the adverse action, there are no factual allegations from which a retaliatory motive might reasonably be inferred. The court agrees with the defendants' alternative argument.

Assuming, without finding, that the allegations regarding the defendants' personal involvement in the disciplinary report are sufficient under *Iqbal,* upon reexamination of the allegations, the court agrees that the facts alleged are insufficient to state a plausible claim that Whidden and Aldi acted out of retaliation, in violation of the plaintiff's First Amendment rights.

The plaintiff avers that the filing of the disciplinary report was in retaliation for his previous lawsuit against Whidden and Aldi. However, there are no factual allegations that would suggest or even permit an inference that the conduct was causally connected and indeed, motivated by the plaintiff's previous lawsuit. The plaintiff relies entirely on the mere fact of the prior lawsuit as the factual predicate for conclusion that the defendants' conduct was motivated by retaliation. This is simply not enough as it is entirely conclusory. *Chavis,* 618 F.3d at 170 (even where plaintiff proceeds *pro se*, "threadbare recitals of the elements of a cause of action supported by mere conclusory statements, do not suffice."). Indeed, the plaintiff's allegations provide ample allegations

---

[2] The existence, or not, of evidence to support a claim is not properly considered when deciding a Rule 12(b)(6) motion to dismiss.

that the SRG disciplinary report was motivated by wholly legitimate security concerns. For example, he acknowledges being involved in a fight on September 20, 2015; he acknowledges that facility intelligence believed it was a gang related fight involving the Latin Kings; he acknowledges having a prior affiliation with the Latin Kings, though denies any present such affiliation.

The motion to dismiss the First Amendment claim against Whidden and Aldi is GRANTED.

**Fourteenth Amendment – Procedural Due Process**

Plaintiff next claims that defendants Cossette and Pacelli violated his Fourteenth Amendment right to procedural due process in connection with his SRG disciplinary report and hearing. In response, Cossette and Pacellie assert that they are entitled to qualified immunity with respect to these claims.

A prisoner is entitled to procedural due process in the conduct of disciplinary proceedings. *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004). "[A]n inmate is entitled to advance written notice of the charges against him; a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence; a fair and impartial hearing officer; and a written statement of the disposition, including the evidence relied upon and the reasons for the disciplinary actions taken." *Id.* However, "[p]rison officials may disallow witnesses at disciplinary hearings without violating due process if the denial is logically related to preventing undue hazards to 'institutional safety or correctional goals.'" *Ponte v. Real,* 471 U.S. 491, 497 (1985). Further, prison officials may disallow witnesses if their testimony is irrelevant, unnecessary or where the witness is an unwilling witness and refuses to testify. *Jamison v. Fischer,* 617 F. App'x 25, 27

(2d Cir. 2015).

The plaintiff's due process claim derives from the defendants denying him the ability to call certain witnesses, the defendants' failure to interview or gather evidence in his defense and the fact that he was only permitted to read his statement in defense at the disciplinary hearing. The defendants assert that the doctrine of qualified immunity shields them from liability under the circumstances alleged here.

The doctrine of qualified immunity balances "the need to hold public officials accountable when they exercise power irresponsibly [with] the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "Qualified immunity protects public officials from liability for civil damages when one of two conditions is satisfied: (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Garcia v. Does*, 779 F.3d 84, 92 (2d Cir. 2015) (quoting *Russo v. City of Bridgeport*, 479 F.3d 196, 211 (2d Cir. 2007)).

"Qualified immunity 'provides ample protection to all but the plainly incompetent or *those who knowingly violate the law*.'" *Vincent v. Yelich*, 718 F.3d 157, 166 (2d Cir. 2013) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)) (emphasis in original); *see also Jackler v. Byrne*, 658 F.3d 225, 243 (2d Cir. 2011) (mere mistake in performance of official duty does not deprive official of qualified immunity defense). However, the inquiry is primarily based on objective factors. *Vincent*, 718 F.3d at 166 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818-19 (1982)). "Absent 'extraordinary circumstances, [i]f the law was clearly established, the immunity defense ordinarily should fail, since a

reasonably competent public official should know the law governing his conduct.'" *Id.* (quoting *Harlow*, 457 U.S. at 818-19).

Cossette and Pacelli contend that they are entitled to qualified immunity on this claim because (1) the plaintiff does not have a clearly established right to have non-consenting witnesses testify at his prison disciplinary hearing, and (2) it was objectively reasonable for them to believe that denying the requested witnesses would not violate the plaintiff's constitutional rights.

The plaintiff has clearly alleged a procedural due process claim. Whether the doctrine of qualified immunity precludes liability under these particular circumstances is not discernible simply by reviewing the plaintiff's allegations pursuant to Rule 12(b)(6). It is not a plaintiff's burden to plead, in the first instance, allegations sufficient to defeat a qualified immunity defense should one be raised. Indeed, the application of the doctrine of qualified immunity is more appropriately raised by way of a motion for summary judgment. *Armstrong v. State of Connecticut Dept. of Children and Families Juvenile Training School*, No. 3:04-CV-360 (WWE), 2004 WL 1151592, at *2 (D. Conn. May 12, 2004); *see also Sira,* 380 F.3d at 68-69. And in fact, the defendants' memorandum of law reads like a motion for summary judgment. The motion to dismiss the Fourteenth Amendment claim pursuant to Rule 12(b)(6) against Pacelli and Cossette is DENIED. The Court makes no finding herein as to the applicability of the doctrine of qualified immunity to these claims.

**ORDER**

The defendants' motion to dismiss the complaint is GRANTED as to defendants Kelly, Bare, Whidden, and Aldi, and the clerk is directed to terminate those individuals as

defendants to this action. The motion to dismiss is DENIED as to defendants Pacelli and Cossette. The case may proceed on the Fourteenth Amendment claim against Pacelli and Cossette.

**SO ORDERED.**

Dated this 4th day of January 2019 at Bridgeport, Connecticut.

_____/s/_____
Kari A. Dooley
United States District Judge