UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| KING KNOWLEDGE BORN ALLAH, | : | |
|     *Plaintiff*, | : | |
| | : | |
| v. | : | No. 3:18-CV-887 (KAD) |
| | : | |
| SCOTT SEMPLE, et al. | : | |
|     *Defendants*. | : | December 4, 2019 |

**MEMORANDUM OF DECISION RE: MOTION TO STRIKE (DE#s 55, 56),
MOTION TO CLARIFY THE RECORD (DE#58), AND
MOTION FOR SUMMARY JUDGMENT (DE#43)**

Kari A. Dooley, U.S.D.J.

**Statement of the Case**

On May 25, 2018, Plaintiff, King Knowledge Born Allah a/k/a Philipe Colon, a prisoner in the custody of the Connecticut Department of Correction ("DOC"), filed a complaint *pro se* under 42 U.S.C. § 1983 against several DOC officials for violating his constitutional rights. Compl. (DE#1). After initial review, the Court, *Meyer, J.*, permitted Plaintiff's Fourteenth Amendment due process claim to proceed against four defendants: Correction Officer Kelly, Correction Officer Cossette, Correction Officer Pacelli, and Lieutenant Bare. Initial Review Order (DE#9). The Court also permitted Plaintiff's First Amendment retaliation claim to proceed against two other defendants: Director of Security Christine Whidden and Security Risk Group ("SRG") Coordinator John Aldi. *Id.* On January 4, 2019, this Court dismissed Plaintiff's claim against Kelly and Bare for insufficient service of process under Federal Rule of Civil Procedure 12(b)(5) and the claim against Whidden and Aldi for failure to state a claim under Rule 12(b)(6). Mem. of Decision Re: Mot. to Dismiss (DE#35). The Court permitted the case to proceed on the due process claim against Pacelli and Cossette. *Id.*

On March 29, 2019, Pacelli and Cossette ("Defendants") moved for summary judgment on Plaintiff's sole remaining due process claim. Defs.' Mot. for Summ. J. (DE#43); Mem. of Law in Supp. of Defs.' Mot. for Summ. J. ("Defs.' Mem.") (DE#43-1). They assert that they are entitled to summary judgment on the due process claim because (1) Plaintiff has failed to present sufficient evidence showing their personal involvement in the deprivation, (2) any due process violation was harmless, and (3) the claim is barred by qualified immunity. Defs.' Mem. at 10-30. Plaintiff countered with a memorandum in opposition to the motion, contending that the evidence supports his due process claim, along with two affidavits. Mem. of Law in Supp. of Pl.'s Opp'n to Defs.' Mot. for Summ. J. ("Pl.'s Opp'n") (DE#53) 16; Aff. of King Knowledge Born Allah ("Pl.'s Aff.") (DE#53) 34; Truth Aff. (DE#51). Defendants filed a reply on June 27, 2019. (DE#54).

On July 11, 2019, Plaintiff filed a motion to strike Defendants' reply to his opposition as "frivolous" under Federal Rule of Civil Procedure 12(f)(2). Pl.'s Timely Resp. Mot. to Strike Defs.' Frivolous Reply and for Leave to be Held to a Less Stringent Standard (DE#s 55, 56).[1] In support of his motion, he argues that Defendants improperly argued that he failed to comply with District of Connecticut Local Rule 56(a)(2) when responding to the motion for summary judgment, and he also asserts additional arguments in his opposition to the motion for summary judgment. *Id.* On July 30, 2019, Plaintiff filed a "Motion to Clarify the Record," in which he asserts that his motion to strike should be granted because Defendants "have made numerous fraudulent, misleading, [and] meritless claims in their reply." Mot. to Clarify the R. (DE#58).

---

[1] The docket reflects two motions to strike Defendants' reply which are identical. *See* DE#s 55, 56.

For the following reasons, Plaintiff's motion to strike Defendants' Reply and "Motion to Clarify the Record" are DENIED, and Defendants' motion for summary judgment is GRANTED.

**Motion to Strike Defendants' Reply**

"[T]he [C]ourt may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter . . . on a motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading." Fed. R. Civ. P 12(f)(2). Motions to strike under Rule 12(f) "are only appropriately directed to *pleadings*;" *Santiago v. Owens-Illinois, Inc.*, No. 3:05-CV-405 (JBA), 2006 WL 3098759, at *1 (D. Conn. Oct. 31, 2006) (emphasis in original) (internal quotations omitted); which include a complaint, answer, answer to counterclaim, answer to crossclaim, third-party complaint, answer to third-party complaint and, if ordered by the Court, a reply to an answer. *See* Fed. R. Civ. P. 7(a). By its text, the rule does not apply to a memorandum submitted regarding substantive motions. *See Carman-Nurse v. Metropolitan District Commission*, No. 3:16-CV-1987 (VAB), 2018 WL 3935025, at *6 (D. Conn. Aug. 15, 2018).

Plaintiff's motion to strike is therefore improper because it is not directed at a pleading but, rather, at a reply memorandum in support of a motion for summary judgment. To the extent he takes issue with any of Defendants' assertions in the reply or the motion for summary judgment, Plaintiff was free to counter their arguments in his opposition and Local Rule 56(a)(2) Statement. Accordingly, the motion to strike (DE # 55, #56) and motion to clarify the record are DENIED.

With respect to the dispute regarding Plaintiff's Local Rule 56(a)(2) Statement, the Court notes that some of Plaintiff's denials contain citations to exhibits and some do not. The Court accepts Plaintiff's Local Rule 56(a)(2) Statement as is. But, per the local rules, any denial or written explanation which does not cite to evidence in the record cannot be relied upon to create a genuine issue of material fact. *See Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000), *cert. denied*, 540 U.S. 811 (2003).

**Standard of Review for Motion for Summary Judgment**

A party seeking summary judgment bears the burden of demonstrating that there are no genuine issues of material fact in dispute and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law" and is "genuine" if "a reasonable jury could return a verdict for the nonmoving party" based on it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir. 1988) (mere existence of alleged factual dispute will not defeat summary judgment motion). The moving party may satisfy this burden "by showing – that is pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (*per curium*) (internal quotations omitted; citations omitted).

When a motion for summary judgment is supported by documentary evidence and sworn affidavits and "demonstrates the absence of a genuine issue of material fact," the nonmoving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (citation omitted). The nonmoving party must do more than

vaguely assert the existence of some unspecified disputed material facts or "rely on conclusory allegations or unsubstantiated speculation." *Id.*; *see also First Nat. Bank of Ariz. v. Cities Service Co.*, 391 U.S. 253, 289 (1968) (nonmoving party must submit evidence supporting factual dispute that will require factfinder to resolve differing versions of truth at trial).

The Court must "construe the evidence in the light most favorable to the non-moving party and to draw all reasonable inferences in its favor." *Gary Friedrich Enters., L.L.C. v. Marvel Characters, Inc.*, 716 F.3d 302, 312 (2d Cir. 2013) (citation omitted). If there is any evidence from which a reasonable factual inference could be drawn in favor of the non-moving party for the issue on which summary judgment is sought, then summary judgment is improper. *See Security Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).

Where one party is proceeding *pro se*, the Court must read his papers liberally and interpret them "to raise the strongest arguments that they suggest." *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015) (internal quotation marks and citation omitted). Despite this liberal interpretation, however, "[u]nsupported allegations do not create a material issue of fact" and cannot overcome a properly supported motion for summary judgment. *See Weinstock*, 224 F.3d at 41.

**Material Facts**

The Court draws the following facts from the Local Rule 56(a) Statements (DE#s 43-2, 53) and the evidence submitted by both parties.

In September 2015, the plaintiff was confined at the Cheshire Correctional Institution ("Cheshire"). Defs.' Local Rule 56(a)(1) Stmt. ("Defs.' Stmt.") (DE#43-2) ¶

5

1; Pl.'s Local Rule 56(a)(2) Stmt. ("Pl.'s Stmt.") (DE#53 at 3-14) ¶ 1.  On September 20, 2015, he was involved in a physical altercation with six other inmates in the day room of the South Block 4 unit at Cheshire.  Defs.' Stmt. ¶ 1; Pl.'s Stmt. ¶ 1.  Afterward, Plaintiff was issued a Class A Disciplinary Report ("DR") for fighting.  Defs.' Stmt. ¶ 2; Pl.'s Stmt. ¶ 2; Defs.' Ex. C (DE#43-6), p. 3; Pl.'s Ex. 2 (DE#1-2).  He pleaded guilty to that DR two days later.  Defs.' Stmt. ¶ 3; Pl.'s Stmt. ¶ 3; Defs.' Ex. C, p.2.

On September 25, 2015, Correction Officer Verdura issued Plaintiff a separate DR for SRG Affiliation.  Defs.' Stmt. ¶ 4; Pl.'s Stmt. ¶ 4; Pl.'s Ex. 7 (DE#1-7), p.2.  The DR was issued after an investigation into the incident on September 20, 2015 revealed that the altercation was between two rival SRGs: the Crips and the Latin Kings.  Pl.'s Ex. 7, p.2; Defs.' Ex. A (DE#43-4) ¶ 17; Defs.' Ex. B (DE#43-5), p.5.  DOC Administrative Directive 9.5, ¶ 12(Y) defines the offense of SRG Affiliation as "[p]ossessing or displaying any materials, symbols, colors or pictures of any identified [SRG]; or behaviors uniquely or clearly associated with a [SRG]."  Defs.' Stmt. ¶ 7; Pl.'s Stmt. ¶ 7; Defs.' Ex. D (DE#43-7), p.12.  In support of the DR, Verdura stated that Plaintiff was "participating in behaviors which are clearly and uniquely associated with [the] Latin Kings."  Pl.'s Ex. 7, p.2; Defs.' Ex. B, p.5.  Intelligence officials also noted that Plaintiff "was being tracked as a member of the Latin Kings . . . and was last designated with an SRG affiliation in 2007 and an SRG safety threat in 2008."  Defs.' Ex. B, p.4

On September 26, 2015, Plaintiff wrote an eight-page statement in defense of the SRG DR, contending that he has not been affiliated with the Latin Kings in ten years; rather, he was a member of the Nations of Gods and Earth ("NOGE"), which pursuant to

a previous district court case, has been designated as a religion in the DOC.[2] Defs.' Stmt. ¶ 14; Pl.'s Stmt. ¶ 14; Defs.' Ex. B, pp. 9-16. Plaintiff added that the fight on September 20 was not gang-related, and he only became involved in the fight because he wanted to help another inmate, Christian Gotay, whom he had known growing up in Hartford. Defs.' Ex. B, pp. 10-13. In his written statement, Plaintiff requested that four correction officers, Barnes, Yahary, Rodriguez, and LaPointe, be interviewed as witnesses for purposes of the DR hearing. *Id.*, p.9. He stated that these officers could attest to the fact that, although he spent time with Gotay in his housing unit, he was not affiliated with the Latin Kings. *Id.*, pp. 12-13.

On September 30, 2015, Plaintiff was interviewed by an investigator named Kelly.[3] Defs.' Stmt. ¶ 15; Pl.'s Stmt. ¶ 15; Defs. Ex. B, p.3. Pursuant to Administrative Directive 9.5, the pre-hearing investigator

> shall inform the inmate about the process of investigation and hearing and ensure the inmate receives a copy of the disciplinary report at least 24 hours prior to any disciplinary hearing. The Investigator shall determine if the accused inmate desires an advocate and shall inform the inmate of the available advocates. . . . The Investigator shall determine if the accused inmate desires a witness(es) and shall list the name and number of each appropriate inmate witness and the name and position of any staff witness. If an inmate declines an advocate or identifies no witnesses, the decision(s) shall be recorded on CM 9505, Disciplinary Investigation Report, which shall be signed by the inmate. . . . The Investigator shall conduct an investigation into the circumstances of each disciplinary report that goes to hearing and gather all information deemed relevant to the disciplinary

---

[2] In *Colon v. Dzurenda*, No. 3:14-CV-461 (SALM), Plaintiff sued various DOC officials for violating his First Amendment right to freely exercise his religion by placing the NOGE on their list of Disruptive Groups and confiscating his religious materials. In a settlement dated February 15, 2017, the DOC officials, while denying liability, agreed to designate the NOGE as religion, remove it from their list of Disruptive Groups, and return Plaintiff's religious materials. *See id.* (DE#89-1).

[3] The Court previously dismissed Plaintiff's claims against Kelly in this action under Rule 12(b)(5) because he could not provide sufficient identifying information for the Court to effect service. Mem. of Decision Re: Mot. to Dismiss at 7-8. Before doing so, the Court checked with the DOC Office of Legal Affairs, which could not identify any official named Kelly who worked at Cheshire during the time in question.

7

report. The Investigator shall report the results of the investigation on CM 9505, Disciplinary Investigation Report.

Defs.' Ex. D, p.17. Additionally, the investigator shall (1) ascertain whether the inmate wants to identify witnesses, and (2) interview any prospective witnesses and list the nature of their testimony. *Id.*, p.18. During the interview, Plaintiff informed Kelly that he would present his own defense and that he wanted Correction Officers Barnes, Yahary, Lapointe, and Rodriguez to testify as witnesses. Defs.' Stmt. ¶ 18; Pl.'s Stmt. ¶ 18; Defs.' Ex. B, p.3. Kelly explained to Plaintiff the "physical evidence" in support of the SRG charge, including photos of him wearing a "Kuffy [with] a tassel attached to it."[4] Defs.' Ex. B, p.3. After the interview, Kelly wrote a Disciplinary Investigation Report documenting his conversation with Plaintiff, including Plaintiff's request for the four correction officers to testify on his behalf. *Id.* Kelly or another DOC official then checked a box at the bottom of the document indicating that Plaintiff had not requested any inmates he wished to call as witnesses. *Id.* The indication is followed by the "inmate signature," which Plaintiff now asserts for the first time is not his signature.[5] *Id.*; Truth Aff. (DE#51), p.1.

On September 30, 2015, Plaintiff was also interviewed by defendant Pacelli, who was assigned as his advocate for the DR process. Defs.' Stmt. ¶ 19; Pl.'s Stmt. ¶ 19;

---

[4] Plaintiff later claimed that these items were the typical headwear worn by NOGE members. *See* Pl.'s Ex. 9 (DE#1-9), p.1.

[5] The Court assigns little significance to this purported anomaly. The Report itself provides that if the box is checked "YES," the witness names are to be included. However, the space for providing the names refers ONLY to inmate witnesses. Defs.' Ex. B, p.3. Plaintiff did not indicate in his written statement that he wished to call any inmate witnesses. Further, the Plaintiff's request for the four DOC employee witnesses is clearly stated in the body of the Report. *Id.* Accordingly, the Court does not consider it a material issue of fact as to whether the Plaintiff signed the Report or whether, as he now asserts, it was forged. All parties agree that the request for witnesses was communicated to Kelly. Defs.' Stmt. ¶ 18; Pl.'s Stmt. ¶ 18.

Defs.' Ex. B, pp. 7-8. Pursuant to Administrative Directive 9.5, an advocate assigned to an inmate for purposes of a DR hearing

> shall meet with the inmate at least 24 hours prior to the hearing, review all submitted documentation and evidence . . . assist the inmate in preparing a defense, and document his/her conclusions and recommendations using form CN 9508, Advocate Report. If the appointed advocate cannot appear at the [DR] hearing, another advocate may be appointed to assist the inmate, or for good cause, the hearing may be continued.

Defs.' Ex. D, p.18. During the interview, Plaintiff informed Pacelli that he had written an eight-page statement in his defense, which he provided to Pacelli, and that he had a file in the property room at Cheshire showing that he was a member of the NOGE, not the Latin Kings. Defs.' Stmt. ¶ 21; Pl.'s Stmt. ¶ 21; Defs.' Ex. B, pp. 7-8. Thereafter, Pacelli completed an Advocate Report, which Plaintiff signed. Defs.' Stmt. ¶ 22; Pl.'s Stmt. ¶ 22; Defs.' Ex. B, pp. 7-8.

The next day, Officer Cossette, who had been assigned as another pre-hearing investigator, completed a Disciplinary Investigation Report regarding Plaintiff's SRG DR. Defs.' Stmt. ¶ 23; Pl.'s Stmt. ¶ 23; Defs.' Ex. B, p.4. Cossette summarized the investigation that concluded on September 25 and noted that photos were discovered in outgoing mail showing three inmates in the fight whom were suspected of being Latin Kings. Defs.' Ex. B, p.4. Cossette also noted Plaintiff's statement in his defense and that Plaintiff failed to identify any inmate witnesses. *Id.* He concluded based on the evidence he reviewed that Plaintiff was guilty of SRG affiliation. *Id.* Cossette's Report appears on the reverse side of Kelly's Report, in which Plaintiff's request for DOC witnesses is documented. Cossette acknowledges that, "[d]uring the prehearing interview, [Plaintiff]

9

provided the statement on the reverse side of this document"[6] and that Plaintiff had "selected to use an advocate and failed to identify any inmate witnesses." *Id.*

Plaintiff's DR hearing took place on October 8, 2015, and Lieutenant Eberle presided as the Disciplinary Hearing Officer ("DHO"). Defs.' Stmt. ¶ 25; Pl.'s Stmt. ¶ 25; Defs.' Ex. B, p.1. Eberle received as evidence Plaintiff's guilty plea to the DR for fighting on September 22, 2015 and the DOC incident report that was completed thereafter. Defs.' Stmt. ¶ 26; Pl.'s Stmt. ¶ 26; Defs.' Ex. A, ¶¶ 19-22; Pl.'s Ex. 2, p.2. At the hearing, Cheshire intelligence officers submitted photographs and documentation supporting the SRG charge, including evidence that two of the inmates against whom Plaintiff had fought on September 22 had prior designations as members of the Crips gang. Defs.' Ex. A, ¶ 20. Another inmate named Perez, who also participated in the fight, testified at the hearing that Plaintiff and Gotay were both members of the Latin Kings. *Id.* at ¶ 21; Defs.' Ex. B, p. 2; Pl.'s Stmt. ¶ 36; Pl.'s Ex. 8 (DE#1-8), p.1.

Plaintiff read his defense statement at the hearing, informing Eberle that (1) the fight was not gang related, (2) that he was not a Latin King, and (3) that he participated in the fight only to help his friend Gotay, whom he knew from outside of prison. Defs.' Stmt. ¶¶ 30-31; Pl.'s Stmt. ¶¶ 30-31; Defs.' Ex. A, ¶ 25; Defs.' Ex. B, p.2; Pl.'s Ex. 8, p.1. He acknowledged, however, "that his whole family is in the Latin Kings in Holyoke, [Massachusetts]." Defs.' Ex. B, p.2; Pl.'s Ex. 8, p.1.

Eberle noted in her Disciplinary Process Summary Report, and states in her affidavit, that Plaintiff did not identify any witnesses he wished to call on his behalf at the

---

[6] Moreover, both Kelly's report and Cossette's report are titled, "Disciplinary Investigation Report." Defs.' Ex B, pp. 3-4. The form number at the top of Kelly's report is "CN 9505/1," and the number atop Cossette's report is "CN 9505/2." *Id.* Thus, each report is one side of the same document. *Id.*

DR hearing or request a continuance to procure any witnesses. Defs.' Ex. A, ¶ 27; Defs.' Ex. B, p.2. Plaintiff denies this claim and filed an affidavit in which he asserts that he asked for witnesses at the hearing.[7] Pl.'s Aff. ¶¶ 43-46. *See also,* Pl.'s Stmt. ¶ 32. At the conclusion of the hearing, Eberle found Plaintiff guilty of the SRG charge based on the evidence presented. Defs.' Stmt. ¶ 34; Pl.'s Stmt. ¶ 34; Defs.' Ex. B, p.2. Eberle did not find credible Plaintiff's explanation that he participated in the fight only to protect his friend Gotay. Defs.' Ex. A, ¶ 33.

As a result of the guilty finding, Plaintiff received twenty days of punitive segregation, sixty days loss of commissary privileges, ten days loss of risk reduction earned credits, and was assigned to a level-5 SRG unit for two years. Defs.' Ex. B, p.1; Pl.'s Ex. 8, p.2. Plaintiff has been designated as a Latin King, pursuant to DOC Administrative Directive 6.14.[8] Defs.' Ex. B, p.2.

Plaintiff immediately appealed the DR decision and his SRG designation, contesting the evidence that was submitted against him and claiming that "none of [his] requested witnesses were interviewed." Pl.'s Ex. 9 (DE#1-9), p.1. District Administrator Peter Murphy denied the appeal on November 9, 2015, stating that the documentation and information submitted before and during the DR hearing supported the SRG finding. *Id.*, pp. 1, 11. Murphy concluded that "no significant due process failure occurred in the

---

[7] The Court need not resolve this factual dispute as it is not material to the determination of the motion for summary judgment. Eberle is not a defendant, and Plaintiff does not bring any claims premised on the manner or means by which the hearing was conducted, only the actions of Pacelli and Cossette leading up to the hearing.

[8] Administrative Directive 6.14 governs the DOC's policies and procedures related to the monitoring and management of SRGs. *See* Connecticut State Department of Correction, https://portal.ct.gov/DOC/AD/A-D-Chapter-6.

disposition of [Plaintiff's SRG] affiliation designation and no support was found to make any modification of [Eberle's] decision." *Id.*, p.11.

**Discussion**

The Fourteenth Amendment provides that a State shall not "deprive any person life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The standard analysis for a claim of a violation of procedural due process "proceeds in two steps: We first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (*per curiam*). A prisoner is entitled to procedural due process in the context of disciplinary proceedings. *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004). However, because the prisoner's liberty interests have already been severely restricted because of his confinement, the prisoner must show that he was subject to an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life" in order to prevail on a procedural due process claim. *Sandin v. Conner*, 515 U.S. 472, 484 (1995). For purposes of this decision, the Court assumes that the Plaintiff has met this burden.[9]

As to the second step of the analysis, the procedural safeguards to which plaintiff

---

[9] As a result of the guilty finding for the SRG DR, Plaintiff received twenty days of punitive segregation, sixty days loss of commissary privileges, ten days loss of risk reduction earned ("good time") credits and was assigned to a level-5 SRG unit for two years. Defs.' Ex. B, p.2; Pl.'s Ex. 8, p.2. In *Peralta v. Vasquez*, 467 F.3d 98, 100 (2d Cir. 2006), the Second Circuit held that a prisoner may not, in a § 1983 action, challenge a disciplinary sanction that affects the length of his sentence, such as loss of good time credits, "unless he has shown that the sanction . . . ha[s] been overturned through administrative channels or by a state or federal court." *See also Torrez v. Semple*, No. 3:17-CV-1232 (SRU), 2018 WL 2303018, at *7 (D. Conn. May 21, 2018). However, as stated in the Initial Review Order, the Court concluded that Plaintiff's confinement in the SRG unit for nearly one-and-a-half years at the time he filed his complaint was, for purposes of initial review, sufficient to plausibly allege a deprivation of a recognized liberty interest under the due process analysis. *See* Initial Review Order, pp. 7-8 (citing *Colon v. Howard*, 215 F.3d 227, 231 (2d Cir. 2000)).

12

is entitled before being deprived of a constitutionally protected liberty interest include: (1) written notice of the charges; (2) the opportunity to appear at a disciplinary hearing and a reasonable opportunity to present witnesses and evidence in support of the defense, subject to the correctional institution's legitimate safety and penological concerns; (3) a written statement by the hearing officer explaining his decision and the reasons for the action being taken; and (4) in some circumstances, the right to assistance in preparing a defense. *See Wolff v. McDonnell*, 418 U.S. 539, 564–69 (1974).

Here, Plaintiff claims that Defendants deprived him of due process by failing to interview the four correction officers he sought as witnesses prior to the DR hearing and failing to obtain his documents which would have identified him as a member of the NOGE and, therefore, not a Latin King. Defendants seek summary judgment on three grounds: (1) Plaintiff has failed to establish Defendants' personal involvement in the alleged constitutional deprivation; (2) any procedural deprivation during the disposition of the SRG DR was harmless; and (3) Defendants are entitled to qualified immunity. Defs.' Mem. at 10-29. The Court agrees with the Defendants' second contention and so does not reach the question of qualified immunity.

**Personal Involvement**

"A prisoner facing a loss of liberty has a qualified 'right . . . to call and present witnesses and documentary evidence in his defense before the disciplinary board.'" *White v. Marinelli*, No. 9:17-CV-1094 (LEK/ATB), 2019 WL 1090802, at *13 (N.D.N.Y. Mar. 8, 2019) (quoting *Ponte v. Real*, 471 U.S. 491, 495 (1985)). In *Fox v. Coughlin*, 893 F.2d 475, 478 (2d Cir. 1990), the Second Circuit held that "[p]rison authorities are . . . under a constitutional obligation to provide assistance to an inmate preparing for a

disciplinary hearing." The official violates the inmate's due process rights when he refuses to interview witnesses on the inmate's behalf without assigning a reason "logically related to preventing undue hazards to 'institutional safety or correctional goals.'" *Id.* (quoting *Ponte*, 471 U.S. at 497); *see also White*, 2019 WL 1090802, at *13 (officials who violate inmate's procedural rights at disciplinary proceedings must offer reasonable justification for their actions). "The burden is not upon the inmate to prove the official's conduct was arbitrary and capricious, but upon the official to prove the rationality of his position." *Fox*, 893 F.2d at 478.

Defendants do not dispute that Plaintiff requested four correction officers to testify on his behalf at the DR hearing. Defs.' Stmt. ¶ 18; Pl.'s Stmt. ¶ 18; Defs.' Ex. B, p.3. Nor do they dispute that the officers were not interviewed or asked to testify at Plaintiff's hearing. They argue, however, that Plaintiff has not provided sufficient evidence to permit a reasonable juror to conclude that either of the Defendants were personally involved in the purported deprivation. "It is well settled . . . that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (internal quotation marks omitted). Specifically, Cossette summarily asserts that he "had no personal involvement in locating certain witnesses and evidence requested by [Plaintiff], as [Plaintiff] was interviewed by pre-hearing investigator Kelly, not defendant Cossette." Defs.' Mem. at 14. But Cossette does not explain how this fact absolves him of any due process obligations when he was clearly aware from Kelly's Report and Plaintiff's written statement that Plaintiff had identified four DOC officials to be interviewed as potential witnesses, a fact deftly avoided in the Defendants' submission.

Cossette, who was a second pre-hearing investigator, Kelly being the first, acknowledged in his Report that he was aware of Plaintiff's request to Kelly, which was in fact on the reverse side of Cossette's Report. Indeed, Cossette's Report provides, "[d]uring the prehearing interview [with Kelly] inmate Colon provided the statement *on the reverse side of this document. …"* Defs.' Ex. B, p.4 (emphasis added). And of course, the statement on the reverse side of the document included a request for the four correction officer witnesses. *Id.*, p.3. Thus, while there may be no issue of fact as to what Cossette did or did not do in terms of an investigation, given his knowledge that the request for witnesses had been made, there is a genuine issue of fact as to whether his failure to act amounted to a constitutional deprivation.

Pacelli asserts that he interviewed Plaintiff on September 30, 2015; "however, [Plaintiff] failed to identify any witnesses to [him]." Defs.' Mem. at 15. Pacelli continues, "[i]n fact, [Plaintiff] signed off on defendant Pacelli's advocate report, acknowledging that he did not ask for witnesses." *Id.* This assertion simply misstates the record. The record reflects that Plaintiff informed Pacelli about his eight-page written statement;[10] Defs.' Stmt. ¶ 21; and that he provided a copy to Pacelli. In fact, the statement is *attached* to Pacelli's Report. *See* Defs.' Ex. B, p.7. It is a reasonable inference that Pacelli read the statement of the inmate for whom he was an appointed advocate. The written statement unequivocally asks for the four DOC employees to be interviewed as potential witnesses. *Id.*, p.9. The Court, therefore, rejects the assertion that "there is no evidence that [Plaintiff] asked defendant Pacelli for witnesses and

---

[10] The Plaintiff also told Pacelli about the file in the property room showing that he was a member of the NOGE and, therefore, not a Latin King. Defs.' Stmt. ¶ 21; Pl.'s Stmt. ¶ 21; Defs.' Ex. B, pp. 7-8.

[Plaintiff] signed a form to that effect." At the very least, a genuine issue of material fact exists as to this issue.

**Harmless Error**

The more problematic issue for Plaintiff is the question of harmless error. Even if a jury reasonably could conclude based on the evidence that Defendants deprived him of adequate assistance and/or the ability to present witnesses or evidence in his defense, Plaintiff has not presented any evidence showing that these witnesses or this evidence would have affected the outcome of his DR hearing. In *Pilgrim v. Luther*, 571 F.3d 201, 206 (2d Cir. 2009), the Second Circuit held that any violation of a prisoner's right to adequate assistance in preparing a defense in advance of a prison disciplinary hearing is subject to harmless error review. *See also Eleby v. Selsky*, 682 F. Supp. 2d 289, 292 (W.D.N.Y. 2010) ("[T]o establish a procedural due process claim in connection with a prison disciplinary hearing, an inmate must show that he was prejudiced by the alleged procedural errors, in the sense that the errors affected the outcome of the hearing"). Because there is no evidence in the record showing what testimony Plaintiff's requested witnesses would have offered or what the records in Plaintiff's property room would have shown, no reasonable jury could conclude that Defendants' failure to procure this evidence in advance of the hearing amounted to a due process violation.

First, Plaintiff presents only his own opinion that testimony from the four correction officers would have helped his defense to the SRG charge. In his complaint, Plaintiff alleged that the officers "can attest that [he] always and only spen[t] time with Mr. Gotay and [was] not in any type of groups." Compl. at 14, ¶ 31. However, in the nearly four years since the hearing on the SRG DR, and despite months of discovery in

this case, Plaintiff has not provided affidavits from these officers or any evidence indicating whether they were even willing to testify on his behalf at the DR hearing and if so, what they might have said. Plaintiff's opinion or proffered testimony as to what these witnesses would have said if called to testify is inadmissible speculation and cannot therefore create a genuine issue of material fact. *See Barros v. Miller*, No. 3:03-CV-1613 (AHN), 2005 WL 2416109, at *3 (D. Conn. Sept. 30, 2005)(Plaintiff's affidavit in which she opined that her reassignment was an adverse employment action because such reassignments only occur when a teacher is being punished or pushed out of the school district was factually unsupported and conclusory and therefore did not create a triable issue of fact.).

And on the issue of affecting the outcome of the hearing, Plaintiff concedes that "no one can [discern] if the testimony would have [a]ffected the outcome of the hearing because no one interviewed the witnesses . . ." Pl.'s Opp'n at 13. Because it is Plaintiff's burden to show that he was prejudiced by the defendants' conduct, he cannot prevail on his claim based on mere speculation that testimony from these witnesses would have helped his defense and affected the outcome of the DR hearing. *See Sawyer v. Prack*, No. 9:14-CV-1198 (DNH/DEP), 2016 WL 5440596, at *12 (N.D.N.Y. July 29, 2016) ("[A]n inmate's speculation regarding what testimony a potential witness might have offered is not enough to demonstrate prejudice and non-harmless error from a disciplinary hearing officer's refusal to ask . . . potential witness to participate in the hearing"); *Eleby*, 682 F. Supp. 2d at 292 (plaintiff failed to show he was prejudiced by lack of testimony from prospective witness and/or denial of documentary evidence).

Similarly, Plaintiff has not demonstrated that he was prejudiced by Pacelli's

17

failure to gather the file from the property room in preparation for the DR hearing. Plaintiff claims that such evidence would have shown that he was a "member of [the] NOGE, not a Latin King." Pl.'s Opp'n at 3. Plaintiff "thought and still thinks" that these documents "would have aided in his defense" at the hearing. *Id.* at 30. To this day, however, Plaintiff has not presented any evidence regarding the content of these documents. Despite months of discovery, he has not obtained and presented as evidence copies of these records for the Court or a jury to review in this case. Thus, he cannot satisfy his burden of showing a due process violation based on the failure of Defendants to procure such records when there is no direct evidence that such records (1) exist, and (2) contain information showing that he was not a member of the Latin Kings. *See Pilgrim*, 571 F.3d at 206 (summary judgment warranted on due process claim based on prison official's failure to interview witnesses and gather documents without any showing that relevant evidence was excluded). No reasonable juror could find a due process violation based solely on Plaintiff's unsupported assertion that such records would have affected the outcome of the hearing.

Because Plaintiff has failed to show that he was prejudiced by Defendants' failure to procure witnesses and other evidence on his behalf at the DR hearing, Defendants' are entitled to summary judgment on the sole remaining due process claim. The Court need not consider Defendants' third alternative argument that they are entitled to qualified immunity on Plaintiff's claim.

**ORDERS**

Based on the foregoing, the motion to strike Defendants' reply (DE#s 55, 56) and motion to clarify the record (DE#58) are DENIED, and the motion for summary

judgment (DE#43) is GRANTED.  The clerk is directed to enter judgment in favor of Defendants and close this case.

**SO ORDERED.**

Dated this 4th day of December 2019 at Bridgeport, Connecticut.

_____/s/_____
Kari A. Dooley
United States District Judge